EASTERN DIST.
*May*, 1840.

PONTCHARTRAIN
RAIL ROAD CO.
*vs.*
ORLEANS NAVI-
GATION CO.

---

PONTCHARTRAIN RAIL-ROAD CO. *vs.* ORLEANS NAVIGATION CO.

APPEAL FROM THE COURT OF THE FIRST JUDICIAL DISTRICT.

The Pontchartrain Rail-road Company have the *exclusive* right and privilege, for twenty-five years, from 1830, of *constructing and using* a rail-road from the city of New-Orleans to lake Pontchartrain.

The legislature possesses the power of granting exclusive rights and privileges as the reward for constructing rail-roads, in the same manner as congress may reward the discoverer of a new invention.

This case commenced by injunction. The Orleans Navigation Company and H. J. Ranney, Esq., were availing themselves of a provision in the charter of said company, to construct a rail-road, or two connected rail-roads, from a point in the city of New-Orleans to lake Pontchartrain, which, the plaintiff's allege, is in violation of their *exclusive* privilege and right to make and use a rail-road from the city to the lake. The provision in their charter, under which the defendants were proceeding, is as follows:

"SEC. 13. The president and directors may *lay out and construct*, from the bayou-bridge at the bayou settlement, *a highway or road*, on each side of the said bayou; and if such road or roads shall be constructed of shells, sands *or other hard materials*, and shall be at least of the breadth of twenty feet, and fit at all seasons for the passage of every kind of wheel carriage, and shall be so certified, &c., said

president and directors may erect a toll gate on each of such roads, &c." See *Territorial act of July 3d,* 1805, *section 13; 2 Moreau's Digest,* 88.

The authority under which the plaintiffs deny the right of the defendants to proceed in the manner they were doing, is contained in the 5th section of the act incorporating the Pontchartrain Rail-road Company, passed the 20th January, 1830, which says "said incorporation is invested with all the rights and powers necessary for the construction and repair of a rail-road from the city of New-Orleans to some suitable point on lake Pontchartrain, &c." "And it is stipulated and agreed that for, and during the space of twenty-five years from the passage of this act, said corporation *shall have the exclusive right and privilege of constructing and using a rail-road or rail-way, leading to and from the city of New-Orleans, &c., to and from Lake Pontchartrain*; and that, during that period, no other body corporate, person or persons, shall make any similar road for the transportation of passengers or property, between said city, &c., and the incorporate limits thereof and said lake ; or be invested with any similar privileges. And it shall and may be lawful for the said corporation to continue and extend said rail-road to any point within the city of New-Orleans, with the like rights and privileges, &c." (See *Session Acts of* 1830, *page 2, section 5.*)

These two clauses of the respective charters of the two companies, makes up the issue, and form the basis of this contestation. There are some bills of exception, which are not material to the decision of the case in this court. The facts of the case are fully stated in the opinion below.

There was judgment perpetuating the injunction, and the defendants appealed.

*Eustis* and *Hoa,* for the plaintiffs.

The appellees will contend, on the appeal :

1. That the charter of the plaintiffs is a lawful contract with the state, which has been complied with on the part of the plaintiffs, and which must be kept on the part of the state.

EASTERN DIST.
*May*, 1840.

PONTCHARTRAIN
RAIL ROAD CO.
*vs.*
ORLEANS NAVI-
GATION CO.

2. That the acts set up in the answer of the defendants, are not authorized by their charter.

3. That there is no error in the judgment of the court below, and the same ought to be confirmed.

*Mazureau*, for the defendants and appellants, contended that the only questions involved, were:

1st. Had the Navigation Company the right to construct the kind of road which they have been enjoined from constructing?

2d. Was the privilege on which the Pontchartrain Rail-road Company obtained their injunction, valid and lawful?

It is here contended, that by their charter, the Navigation Company had a right to make on either side of bayou St. John, from the bridge settlement down to the lake, any kind of road or highway whatever, and of any kind or mode, whether then known in this country or not, at that period; and that, as it respects particular kinds of roads, or mode of making roads, then unknown here, and since discovered or invented, none but the inventors or discoverers thereof, having obtained a patent therefor, could legally oppose the Navigation Company, or prevent them from constructing it.

The clause in the charter of the Navigation Company is, on this subject, as full and general as possible; it admits of no exception or restriction whatever. The Company may construct and lay out, on each side of the bayou, a highway or road, constructed of shells, sands, or other hard materials. In the presence of such a clause, can it be pretended that, if at that period it had pleased the company to construct on either side of the bayou what we call a rail-road, already known, and many years before, in Europe, it would not have been justified in doing so under its charter; or that any body would have been right in contesting the faculty of exacting from passengers the terms fixed by the said clause?

It is here confidently asserted, that as soon as a new discovery or invention has been made in any other country than the United States, any man; any body, individual or corporate, may use the same in the state of Louisiana; and that

no body or power whatever, not even the discoverer or inven-
tor with his patent or brevet, obtained in Europe or in any
other part of the civilized world, except the United States,
would in any manner feel authorized to interfere and prevent
the use of the new discovery or invention.

. If this position be correct, (and it is believed that it cannot
be contested that it is) the Navigation Company, who by
their charter were authorized to construct a highway, or
road of any hard material, had, most undoubtedly, the right
to make a rail-road, without asking any body's permission.

2. Neither congress or the legislature have the power to
give the exclusive privilege of the construction and use of a
rail-road, as a reward for those who employ their industry in
doubtful, but useful enterprizes, and in the same manner
as congress can reward the discoverer of a new invention.
And first, let us read the constitution of the United States on
this subject. It says: "Congress shall have power to pro-
mote the progress of science and useful arts, by securing for
limited times, to authors and inventors, the exclusive right
to their respective writings and discoveries." We find here,
nothing of a *reward*. We find an encouragement to science
and useful arts, no doubt; we find, also, protection to in-
ventors and discoverers; but that is all, and that is enough.
It is just and proper, it is equitable, that a person who has
made a new discovery or invention, be protected in the en-
joyment of all the advantages that can be derived therefrom.
The discovery, the invention is his property, his most sacred
property. Let him, therefore, be exclusively benefited by
it, as far as it is consistent with the interest and prosperity of
the country. But to *reward* him for it is more than was, or
could be contemplated by the framers of the constitution;
unless the sense of the word *reward* is restricted to the mean-
ing; the plain meaning, of the words used by the constitu-
tion: "To *secure for limited times*, to the authors and inven-
tors, the *exclusive* right to their respective writings and dis-
coveries."

Could congress, if any but the author or discoverer of a
new invention should apply for a patent or an exclusive

EASTERN DIST.
*May*, 1840.

PONTCHARTRAIN
RAIL ROAD CO.
*vs.*
ORLEANS NAVI-
GATION CO.

privilege to use the new invention; could they, it is asked, grant him that privilege? It is not only doubted, it is denied; unless, perhaps, the applicant had the right transferred on him, to the invention, by the author or discoverer.

But surely, if the gentlemen who have solicited and obtained their charter of the Pontchartrain Rail-road Company, had applied to Congress, or to the patent office, for a similar privilege to the one they have got from our legislature, and upon such grounds as those described in the preamble of said charter, they would not have been listened to.

3. It may, it is believed, be confidently asserted, that, with but very few exceptions, great and new enterprizes are doubtful. We see, in the present age particularly, adventurers and speculators, the wildest in the world, embark in enterprizes of every kind. To their doing so, there can, perhaps, be no well founded objections in a government like ours; but reason seems to tell us that, if they are willing to undertake to carry into effect any of their wild schemes or projects, they ought not to be encouraged, countenanced or *rewarded* by the legislature. Let them do it at their own peril; let them, if they succeed, enjoy the benefit of it. Are they discoverers or inventors? let them be secured in their right of authorship. Are they not? take care, if you can, that poor, ignorant, weak or credulous persons, be not the dupes or victims of their ambitious and wild schemes.

But, the public may be benefited by it; the enterprize may prove to be of great utility to the public. God knows! But to this there is a most satisfactory answer: any man is at liberty to speculate or embark in doubtful enterprizes; but all he can claim is, that he be not interfered with, or prevented from going on, unless his projects are contrary to law or good morals.

Suppose a shoemaker, after having jointly with several others, "devoted much time and labor, and expended considerable sums of money, in ascertaining the practicability of erecting a grand manufactory of shoes and boots, by means of which they would be enabled to sell boots and shoes twenty five per cent. cheaper than boots and shoes are generally

and usually sold for;" can any person imagine that the legis- lature would be justifiable in granting them the exclusive privilege of establishing that grand manufactory, and of selling their boots and shoes at that price? Yet it would be of great utility, nay, of great benefit to the public, to the people. No such privilege would, most assuredly, be granted, unless the applicants were the authors, inventors or discoverers, of a new manner or mode of making shoes and boots; and in the right of using that new manner or mode, they would certainly be entitled to be secured, but in nothing else.

Now let us examine the privilege granted to the Pontchartrain Rail-road Company.

4. It is firmly believed that in these matters the truest and soundest principle is that privileges ought always to be strictly construed. If so, can it be said that the privilege goes to prevent any person from constructing and using a rail-road *from* any point in the limits of the city *to* any other point nearer than the lake? No. The exclusive privilege is *to* and *from* the city; *to* and *from* the lake; to that it is fixed, to that it is limited, to that it is restrained. It is not a privilege to go *from* the city *to* any intermediate point, or to come *from* the lake *to* any such intermediate point. The rail-road must be one entire and continued uninterrupted road from one point to the other, from the city to the lake.

Therefore, any man has a right to construct a similar road, that will not go from one to the other of said points. To say the contrary, would at once deprive our citizens of the right and faculty, which they certainly have, of connecting their own plantations or establishments with the city or any part of its suburbs, or incorporated limits by means of rail-roads; and it is here confidently asserted that it cannot be done, unless it be first admitted that our citizens are to be governed, not as free white people, but as slaves, who have no rights, or whose rights can be disposed of without their will, advice or consent.

5. Then it is contended, with an uncommon degree of confidence, founded upon an undoubted knowledge of the free institutions by which we are governed, and of the

EASTERN DIST.
May, 1840.

PONTCHARTRAIN
RAIL ROAD CO.
vs.
ORLEANS NAVI-
GATION CO.

undoubted disposition of our supreme judiciary power, to protect all the members of this community in the full enjoyment of the rights which those fundamental institutions have been created to secure to them ; that the defendants had a right to do what they were doing, when stopped and prevented by the injunction from the District Court.

To decide otherwise, is to say : 1st. That the charter of the Navigation Company, twenty-five years older than that of the Pontchartrain rail-road, which most undoubtedly gave them the right and power of constructing on both sides of the bayou, a highway or road, of any kind, shape or form, provided it was of hard materials, could be violated and trampled under foot by a subsequent charter, law or contract. 2d. That that charter can be strictly, rigidly and severely construed, and the meaning of it restricted to the sole meaning which the words used in it might have at the time, in the opinion of persons not acquainted with the existence of rail-roads in Europe, whilst the charter of the Pontchartrain rail-road is liberally construed, and the privilege it contains extended beyond the plain *letter* thereof. 3d. That our constitution is inconsistent, or may be inconsistent with the constitution of the United States ; which cannot be said.

6. The defendants are well aware that the constitution of the state says nothing respecting patents or privileges to encourage science or useful arts. But they do sincerely believe, that when the law of congress, by which the people of the then territory of Orleans have been enabled to form a constitution and state government, was passed, which contained a positive provision that our constitution shall be *republican,* and *consistent* with the constitution of the United States, it could not be intended that our constitution, which is our own private social compact, would vest our legislature, with any power, expressed or implied, that would be inconsistent with the constitution of the United States. The provision in this instrument does certainly vest congress, and congress alone, with power to encourage new discoveries and inventions, and to secure to their authors, their respective rights to their said discoveries. This power, the several states have, there-

fore, divested themselves of, and none of them can exercise it, except perhaps within their own limits. But, surely, to go beyond that which was clearly intended and expressed in this federal compact, is far from being consistent with it. To say that men who have employed their capital and industry, or time, in ascertaining the possibility of connecting, by a rail-road, the city of New-Orleans with the lake, which *possibility* was ascertained twenty-five or thirty years before and which *connection* or connexity already existed by natural means of navigation, shall have the exclusive privilege of making a rail-road from one of these two points to the other, is far from being republican; it rather savors of despotic government. It is an injustice done to all the free citizens of the country; it is a monopoly granted without any merit on the part of the grantee. It is inconsistent with the constitution of the United States, made, as the sovereign people in convention said, to establish justice; it is even contrary to the spirit and intent of our own constitution, which was "*ordained and established to secure to all the citizens the enjoyment of the right of life, liberty and property.*"

Certainly, my right of liberty and property is abridged, when I am deprived of the faculty of making or using, without paying, an invention or discovery made in Europe, and for which no patent or privilege has been given by competent authority for the same, in these United States, to its discoverer or inventor.

*Martin, J.*, delivered the opinion of the court.

The plaintiffs complained that the Orleans Navigation Company and H. J. Ranney, Esq., were violating their privileges and rights granted to them by the legislature, in attempting to construct a rail-road from the corner of Franklin and Toulouse streets, in New-Orleans, to lake Pontchartrain: and on showing that said defendants had already began to construct said rail-road, at or near the Basin Carondelet, the plaintiffs obtained an injunction, restraining and prohibiting the defendants from proceeding any further with said work.

*Eastern Dist.*
*May,* 1840.

PONTCHARTRAIN
RAIL ROAD CO.
*vs.*
ORLEANS NAVI-
GATION CO.

EASTERN DIST.
*May*, 1840.

PONTCHARTRAIN
RAIL ROAD CO.
*vs.*
ORLEANS NAVI-
GATION CO.

The defendants severed in their answers. The Orleans Navigation Company denied that the plaintiffs had the exclusive right and privilege to construct and use a rail-road from the city of New-Orleans to lake Pontchartrain, as they claim; and which right and privilege they could only claim as inventors, having a patent therefor. They expressly aver, that they were commencing, and still intend to construct, from the Metairie road, or the Bayou settlement, to lake Pontchartrain, a rail-road for their own use and exclusive benefit, which they are authorized to do by their charter; that the right of constructing and using a rail-road, or any other road made of hard materials, has been expressly granted to them by the act of the legislative assembly of the territory of Orleans, approved July 3d, 1805.

The defendant, H. J. Ranney, pleaded a general denial, and admitted that he was constructing a rail-road from the corner of Toulouse and Franklin streets, along the canal Carondelet to the Metairie road, and that he in no way interferes with the rights and privileges claimed by the plaintiffs; and he positively denies all the rights and privileges claimed by the plaintiffs. The defendants pray for the dissolution of the injunction, with damages.

The cause was submitted to a jury, under a charge from the court, who returned a verdict for the plaintiffs. From judgment perpetuating the injunction, the Orleans Navigation Company appealed.

The counsel for the appellants, at the close of the evidence offered by them, filed *a renunciation* of any right on the part of the Orleans Navigation Company, to construct a rail-road from the settlements at the bayou bridge, on the bayou St. John, to lake Pontchartrain; and limited itself to the right to make a rail-road from the bayou bridge, along the bayou St. John, to a harbor to be constructed in said bayou St. John, at a point short of the mouth thereof, in such manner that said rail-road shall not touch at any point on the lake, but terminate at a point before coming to it. The filing of the renunciation was objected to by the plaintiff's counsel, and admitted by the court.

It is not contended that the plaintiff's charter does not grant to them "the *exclusive* right and privilege of constructing and using a rail-road leading from the city of New-Orleans to lake Pontchartrain, during the space of twenty-five years from its date; and that during that period no other body corporate or persons, shall make any similar road for the transportation of passengers or property, between the city and the lake." (See *Session Acts of* 1830, *section* 5, *page* 4.) It is, however, urged, that this charter violates the prior rights of the appellants under theirs, which authorizes them to "lay out and construct, from the bridge at the bayou settlement, a highway, or road, on each side of the bayou, to the lake." This did not authorize them to violate the rights of the patentees, who had obtained the exclusive privilege of employing particular materials in the construction of roads; nor the rights of any individual or corporation who had obtained the exclusive privilege of making a particular kind of road; especially such a species of road as was unknown at the time the appellant's charter was granted. In the same manner as congress may reward the discoverer of a new invention or mode of constructing roads, by an exclusive privilege, the legislature may reward those who employ their capital and industry in doubtful enterprizes, for the construction of a rail-way between two points, which may be of great utility to the public, though the success of the enterprize may be precarious.

The renunciation of the appellants, proposing to change the point of termination of their road, towards the lake, was properly disregarded, as there can be no material difference between carrying the road to the lake, or to an indefinite point or distance therefrom.

There is a bill of exceptions taken by the counsel for the defendants, to the refusal of the judge to charge the jury, as asked for by them. We have examined the points on which the court was required to instruct the jury, and are of opinion they do not require any particular notice from us.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be affirmed, with costs.

The Pontchartrain Rail Road Company have the *exclusive* right and privilege for twenty-five years, from 1830, *of constructing and using* a rail-road from the city of New-Orleans to lake Pontchartrain.

The legislature possesses the power of granting exclusive rights and privileges, as the reward for constructing rail-roads, in the same manner as congress may reward the discoverer of a new invention.